IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM EUGENE MILLER,<br>  Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | No. 3:06-CV-38<br>(Phillips) |
| LOCKHEED MARTIN ENERGY SYSTEMS, INC.,<br>  Defendant. | )<br>) | |

## MEMORANDUM OPINION

Plaintiff William Eugene Miller has sued his former employer, Lockheed Martin Energy Systems, Inc., alleging he was wrongfully discharged in 1999 because of his race and that during his employment he was subjected to unequal terms and conditions of employment, including racially disparate supervision and discipline. Defendant has moved for summary judgment asserting that there are no genuine issues as to material facts, and that Lockheed Martin is entitled to judgment as a matter of law on all of plaintiff's claims. For the reasons which follow, defendant's motion for summary judgment will be granted, and this action will be dismissed.

## Factual Background

In 1970, Miller, an African-American male, was employed by Union Carbide Corporation, the contractor for the government-owned nuclear facilities at Oak Ridge, as an associate engineer. He soon left for three years in the United States Army. He returned to active employment with Union Carbide in 1973. He became employed by defendant

Lockheed Martin Energy Systems, Inc. (LMES) in 1984 and remained in that employment until his termination in December 1999. At that time, Miller was employed in the Y-12 Engineering Division.

During his employment with Union Carbide and LMES, Miller consistently received satisfactory performance reviews. He was promoted a number of times, first to Senior Engineering Assistant, then Associate Design Engineer, Engineer I, Engineer II, Engineer III, Engineer IV, and in 1997 to Engineer Specialist. Miller's relationship with his supervisors was very good and he felt he was treated fairly by them. Miller never made an informal or formal complaint regarding his treatment by management during his employment.

LMES policy prohibited employees from using government-owned computers for personal reasons. The policy stated that excessive misuse could result in termination, even for a first offense. The policy was made known to employees by handbook, letter, and by instruction on the computer screen when the computer was activated.

In December 1999, LMES management received an anonymous complaint alleging excessive non-work related use of the internet on company premises by Miller. LMES investigated the allegations and found Miller had violated the computer policy and had also falsified his time records. His computer records showed that he had used his computer for personal purposes for approximately 90 hours over a four-month period,

averaging 54 minutes a work day. The investigation also revealed a large history file with access to a number of non-work related sites, such as sports and travel. Moreover, Miller charged the time thus used for cost accounting to specific work projects he had been assigned.[1]

Miller was presented with the results of the investigation on December 20, 1999. He acknowledged that he had used the computer for personal use and attributed it to mental lapses on his part. Miller was told the matter would be reviewed and that he should return at 9:00 a.m. on December 21. Miller was placed on crisis suspension, relieved of his badge, and escorted from the premises following the meeting.

At the December 21 meeting, Miller was asked if he had anything to add. He said that he had not had time to think about it, that he was guilty of improper use of the computer, but that had not been his intent. He further stated that he had acted as he had because work was slow. Miller was informed the matter had been reviewed by senior management and because there was no tolerance for such conduct, that he was to be terminated. In lieu of termination, Miller was permitted to retire.

---

[1] During LMES' investigation, a pornographic picture was noticed on Miller's computer. Miller stated that the picture had been sent to him from someone outside LMES, and he thought he had deleted it from his computer. Ed St. Clair testified that the presence of the picture would not have made a difference in the outcome of the investigation. Thus, the picture will not be considered in the court's analysis of the summary judgment motion.

LMES has moved for summary judgment asserting that (1) the undisputed evidence fails to support Miller's claim for wrongful termination, and (2) the evidence fails to establish a racially hostile work environment.[2] Therefore, LMES asserts that it is entitled to judgment as a matter of law on plaintiff's claims.

Plaintiff William Miller has responded in opposition, stating that the evidence in this case demonstrates that he was subjected to an investigation and punishment disproportionate to that given to similarly-situated white peers.

**Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-

---

[2] Although Miller's complaint alleges a claim for hostile work environment, he has presented no evidence in support of the claim in response to the summary judgment motion. Thus, LMES is entitled to summary judgment on Miller's claim of hostile work environment.

movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Analysis**

Miller has alleged that his termination was not justified and in fact was motivated by racial discrimination.  An employee may prove discrimination in two ways.  The first is by putting forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision.  *See Robinson v. Runyon,* 149 F.3d 507, 512-14 (6th Cir. 1998). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999).  Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred.  *Kline,* 128 F.3d at 348.

Under the circumstantial or indirect evidence method, the employee must first establish a *prima facie* case of discrimination.  *Monette v. Electronic Data Sys., Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996).  To demonstrate a *prima facie* case of race discrimination, Miller must show that (1) he was a member of a protected class, (2) he was qualified for

the position, (3) he was discharged, and (4) his discharge was based upon his race. *Wade v. Knoxville Utilities Board,* 259 F.3d 452 (6th Cir. 2001).

Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Monette,* 90 F.3d at 1186. If the employer is able to sustain its burden, then the mandatory presumption evaporates into a permissive inference, and the burden shifts back to the employee to show that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* While the burden of production shifts back and forth between the parties under the *McDonnell Douglas* framework, the ultimate burden of proving that the employer discriminated against the employee on account of his race remains at all times with the employee. *Id.*

An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee. *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). In challenging an employer's action, an employee "must demonstrate that the employer's reasons are not true." *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998).

Miller, as an African-American, belongs to a protected class. In addition, LMES does not dispute that Miller was qualified for his position, or that he was discharged in December 1999. However, the parties disagree that Miller's discharge was based upon his race. Miller does not offer any direct evidence of discrimination. Instead, Miller contends that he can show he was terminated by reason of his race because four non-minority employees were given positive discipline rather than discharge for computer misuse.

LMES evaluated violations of the computer policy on a case-by-case basis, and applied a "Positive Discipline" policy to these violations under which an employee could receive (1) coaching and counseling, (2) an oral reminder, (3) a written reminder, (4) decision-making leave, or (5) disciplinary and/or crisis suspension. However, LMES had no obligation to first employ progressive discipline before discharging an employee. The LMES positive discipline policy stated:

> LMES reserves the right to impose appropriate discipline, including termination, based on the facts of each case. Progressive discipline is not always appropriate. Certain rule violations are serious enough to warrant higher levels of discipline or even termination for a first offense.

The LMES' positive discipline process clearly provided that certain offenses would justify bypassing progressive discipline and could result in immediate termination. Nothing in this policy gave Miller any right to receive lesser progressive discipline in lieu of termination.

Miller insists that, in light of his qualifications, lengthy tenure in his position, and good performance reviews throughout his career, he should not have been summarily dismissed; however, Ed St. Clair, Head of Engineering, testified that he felt this was a clear case for dismissal, and that Miller's conduct warranted termination, not progressive discipline. Furthermore, the LMES' positive discipline policy stated that violators could be terminated for even a first offense. Miller offers no evidence to show that he was entitled to progressive discipline for the type of misconduct that resulted in his discharge. Miller may not simply substitute his own business judgment for that of the defendant. Rather, to survive a summary judgment motion, Miller must show that a reasonable jury could conclude that the actual reasons offered by LMES were a mere pretext for unlawful discrimination, not that other reasonable decision-makers might have retained him. *See Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 550 (6th Cir. 2004).

To show that he was treated differently from similarly situated white peers for the same or similar conduct, Miller must show that "all relevant aspects" of his employment situation were "nearly identical" to those of the allegedly similarly situated white employees. *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004) (*quoting Ensley-Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir. 1996). To be deemed "similarly situated," the individuals with whom Miller compares himself "must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id., quoting Gray v. Tobisha Am. Consumer Products,*

*Inc.,* 263 F.3d 595, 599 (6th Cir. 2001); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). It is Miller's burden to establish that the other employees' acts were of comparable seriousness to his own infraction. *See Warfield v. Lebanon Correctional Inst.,* 181 F. 3d 723, 730 (6th Cir. 1999).

LMES submitted a chart of disciplinary actions for computer abuse cases in 1999 as follows:

| Name | Hours | Min. p/Day | Discipline | Race |
|---|---|---|---|---|
| Sharpe, Jr. | 5.5 | 3.93 | DML[3] | White |
| Sneed | 17.5 | 12.50 | DML | White |
| Roberts | 40.0 | 28.57 | DML | White |
| May | 42.6 | 30.43 | DML | White |
| Sharp | 43.9 | 31.36 | DML | White |
| Hayes | 73.2 | 51.67 | Discharged | White |
| Kellum | 77.7 | 55.50 | Retired[4] | White |
| **Miller** | **92.5** | **54.41** | **Discharged** | **Black** |
| Poteet | 104.8 | 74.86 | Discharged | White |
| Sparks | 114.9 | 328.29 | Discharged | White |
| Ferguson | 116.4 | 83.14 | Discharged | White |
| Woodard | 164.8 | 117.71 | Discharged | White |

As shown above, Miller falls squarely in the midst of the terminated employees. Miller does not dispute LMES' finding that he spent more than 90 hours on his company computer for personal reasons. Two white employees were discharged for less total time than Miller. Of the seven employees discharged for personal use of company computers, six were white and only Miller was black. This does not show that Miller was singled out for

---

[3] Decision Making Leave.

[4] Like Miller, Kellum was allowed to retire in lieu of termination.

discharge on account of his race, but rather for the amount of time spent on the company computer for personal reasons.

Miller argues that his termination was disproportionate because, when you look at the hours per day, he spent fewer hours per day than did white employees who were not terminated. Miller calculates his time per day at 17.64 minutes. However, Miller has calculated his time using "calendar" days. LMES has computed the time using "work" days with a different result. As the table above shows, Miller's actual personal use was at least 54 minutes per day, not 17 minutes as he claims. At least one white employee was terminated for spending less personal time per day on the internet. Those employees who were given lesser discipline (a DML) engaged in no more than 31.36 minutes per day.

The four employees who received positive discipline, L.E. Sneed, J.R. Sharp, John May and Douglas Roberts, are not similarly situated to Miller because they spent less than 31 minutes per day on the computer, as compared to Miller's 54 minutes per day. Thus, their violations were not comparable to that of Miller. Thus, contrary to Miller's contention, they were not "similarly situated" in "all of the relevant aspects," and cannot be used as comparators. *Noble v. Brinker Intern. Inc.,* 391 F.3d 715, 729 (6th Cir. 2004); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). Because Miller's personal use per day (54 minutes) is significantly more than the alleged comparators, he cannot demonstrate he was treated worse than any similarly situated white employee.

The record shows that LMES terminated seven white males in 1999 under circumstances comparable to those of Miller. LMES management reviewed decisions in comparable cases before a final decision on Miller was made. The court can draw no rational inference of discrimination from these facts. Rather, it appears to the court that Miller was treated the same as were the white employees who committed comparable offenses. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Miller has failed to meet that burden.

Miller also argues that LMES did not conduct an adequate investigation, because without interviewing him, it is impossible to tell whether some of the websites he visited were work related. Sixth Circuit precedent does not "require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998). An investigation is sufficient if the employer "reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.* In this case, upon receiving an anonymous complaint alleging excessive non-work related use of the internet on company premises by Miller, LMES investigated the allegations. LMES gave Miller the opportunity to respond to the charges. Miller admitted (1) that he had used the company computer for personal use, (2) to order personal checks, (3) to pull up his check

book twice a day, (4) going to the web "to kill time," and (5) looking at golf sites. At the completion of the investigation, LMES found that Miller had spent a total of over 90 hours on the internet, an average of 54 minutes per work day for personal reasons. Based on these circumstances, the court concludes that LMES reasonably relied on particularized facts in making a reasonably informed and considered decision to discharge Miller. Miller has not presented sufficient evidence such that a factfinder could find that LMES's given reasons for his discharge were pretextual, nor has he met the ultimate burden in this case of presenting sufficient facts to show that he was the victim of intentional race-based discrimination. There are no genuine issues of material fact in this case, and LMES is entitled to judgment as a matter of law.

## Conclusion

For the reasons stated above, the court finds that defendant LMES is entitled to judgment as a matter of law on Miller's claims of discrimination under Title VII. Accordingly, defendant's motion for summary judgment [Doc. 7] will be granted, and this action will be dismissed.

**ENTER:**

      s/ Thomas W. Phillips
     United States District Judge